## Case No. 5,047.

Ex parte FRANCOIS.

[3 Woods, 367.] [1]

Circuit Court, W. D. Texas. Aug. Term, 1879.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

C. J. Garland, for relator.
D. G. Wooten, for the State.

DUVAL, District Judge. An application similar to the present one was made to me some two years ago, in behalf of one Lou Brown, a white woman who had married a negro man. In her case the writ was granted and the petitioner was discharged. On that occasion no argument was had. The case was submitted to the court upon the facts as they appeared from the petition and the return of the officer, and with what seemed to be a tacit understanding of counsel on each side, that the prisoner ought to be discharged. Such at least is my recollection of the case. My impression then was that the act of the Texas legislature of February 12, 1858, which made it a penitentiary offense for a white person to marry a negro, was obsolete and inoperative, as having been passed when the negro was a slave, and not regarded in law as a "citizen of the United States." And if not obsolete, that it was in contravention of the fourteenth amendment of the federal constitution, and of the civil rights bill, because it inflicted a penalty upon the white person alone. At a subsequent period, the precise question came before the Texas court of appeals, in the case of Frasher v. State, 3 Tex. App. 263. That court held that the statute in question was still in force, and was not invalidated by the adoption of the constitutional amendments, or by the civil rights bill. The reasoning of the court in this case, and a more thorough consideration of the case, induce me to doubt the correctness of my first impressions when acting in the case of Ex parte Brown.[3]

The subject of marriage is one exclusively under the control of each state. Each one may pass such laws as it deems proper regulating the institution. One may forbid marriage for some causes, which would be no impediment in another, and may prescribe different penalties for a violation of the same prohibition. If a state thought proper to do so, I am not satisfied that she would be prohibited by any express provision of the federal constitution, or of the civil rights bill, from passing a law forbidding a marriage, among white persons, between an uncle and his niece, or between a Christian and a Jew, and imposing a penalty for its violation upon the man alone. If it could do this, then it could certainly forbid the marriage between a white person and a negro, and affix a penalty for the act upon the former alone. If the Texas statute punished the negro in such case and not the white person, then it would be clearly opposed to the civil rights bill, which expressly provides that the negro shall only be subject to the like pains and penalties as the white race. But is the converse of this proposition to be held as true in all cases? Upon mature consideration, I doubt whether it is so.

That the law in question is unwise and unjust—that it is repugnant to the spirit of the constitution, and of the civil rights bill, both of which contemplate the equality of all persons before the law, and the equal protection of the law to all—I have no doubt. At the same time, I am not satisfied that it vio-

[3] [See note at end of case.]

lates the letter of either. Unless it did so, I would not feel justified in declaring it to be unconstitutional.

As respects intermarriage between the white and black races, it is very certain that such a connection would rarely occur but for the influence of the former over the latter—an influence resulting from the superior education and intelligence of the whites, and the subordinate position so long held by the colored race. For such unnatural marriages, the whites are mainly to blame, and this may furnish some excuse, if not a justification, for punishing them alone, as a means of prevention. The learned counsel of petitioner has referred me to a newspaper report of a decision lately made by the circuit court of the United States in San Francisco, as supporting this application for a writ of habeas corpus. It is the case of Ho Ah How v. Nunan [Case No. 6,546], sheriff of the city and county of San Francisco. Without attempting to analyze the facts of the case, it seems to me they are so wholly different from the present as to render the decision of the court therein wholly inapplicable.

As before stated, I regard the acts of the Texas legislature as being unjust in its discrimination against the white race, and as contrary to the spirit of the constitution; but inasmuch as it relates to a subject over which the state has complete and exclusive control, and because I doubt whether it can be properly held to be a violation of the letter of the constitution, or of any law made in pursuance thereof, the application for the writ of habeas corpus must be refused.